## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**CENTRAL DIVISION**

No. 05-40073-FDS

| |
|---|
| JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k) PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC., |
| Plaintiffs |
| v. |
| CIPC SYSTEMS, INC. and RICHARD A. PERRY, |
| Defendants |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

NOW COMES the Defendants, CIPC Systems, Inc. ("CIPC") and Richard A. Perry ("Perry") and move to dismiss the Plaintiffs' state law claims as they are preempted. Defendants also move to dismiss the ERISA claim of the Plaintiff, Town Paint & Supply Co., Inc., ("Town Paint") for lack of standing.

I.    FACTS

The Plaintiffs, James J. Sandler as an Individual ("Sandler"), James J. Sandler as Trustee of the Town Paint & Supply Co., Inc. 401(k)/Profit Sharing Plan ("the Trustee") and Town Paint & Supply Co., Inc. ("Town Paint") have brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq., as well as state law claims for professional negligence, misrepresentation, breach of fiduciary duty, contribution and indemnification. [See Complaint, attached as Exhibit

"A"].  The Complaint alleges that Town Paint sponsored the Town Paint & Supply Co.,
Inc. 401(k)/Profit Sharing Plan ("the Plan"), and that Sandler was a Trustee, participant
and beneficiary of the Plan.  [Exhibit "A", ¶ 2, 5, 6].  The Complaint alleges that the
Defendants were the Plan's Third Party Administrator and failed to properly conduct tests
to determine whether the Plan was in compliance with the IRS Code and regulations,
particularly the requirement concerning "Top-heavy" 401(k) Plans.  The Plaintiffs also
allege that the Defendants failed to advise them on how to address the "Top-heavy"
nature of the Plan, and as result, the Plaintiffs suffered damages.


II.    LEGAL STANDARD

        "When evaluating a motion to dismiss under Rule 12(b)(6), [the court] take[s] the
well-pleaded facts as they appear in the complaint, extending [the] plaintiff every
reasonable inference in his favor." Pihl v. Massachusetts Dep' t. of Educ., 9 F.3d 184, 187
(1st Cir. 1993).  In deciding a motion to dismiss for failure to state a claim, courts give
"no weight to bald assertions, unsupportable conclusions, and opprobrious epithets."
Chongris v. Bd. Of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).  When, as here, "it appears
to a certainty that the plaintiff would be unable to recover under any set of facts," the
complaint must be dismissed.  Roma Const. Co. v. Russo, 26 F.3d 566, 569 (1st Cir.
1996).  Put another way, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be
granted "if the factual averments do not justify recovery on some theory adumbrated in
the complaint." Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).  As will be shown
below, because Plaintiff's state law claims for bad faith are preempted by ERISA,
Plaintiffs cannot recover on those claims under any set of facts.  Likewise, because the

Plan and Town Paint do not have standing under ERISA, they cannot recover under ERISA under any set of facts.

III.    ARGUMENT

      A.    PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY ERISA.

In Count I of the Complaint the Plaintiffs allege that the Defendants were fiduciaries of the Plan as defined by ERISA and that Defendants breached Section 404(1) of ERISA [29 U.S.C. §1104] which requires a fiduciary to "discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purposes of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims..."    Furthermore, Plaintiffs seek to recover under 29 U.S.C. §1109 of ERISA, which provides:

> "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon a fiduciaries by his subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any such profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

[Exhibit "A", ¶27-31].

This claim of breach of fiduciary duty under Section 404(1) arises solely from alleged acts or omissions by the Defendants in the administration of the Plan.  It is abundantly clear

that without the Plan, the Plaintiffs have no action against the Defendants.

Plaintiffs also assert state law claims of professional negligence (Count II), negligent misrepresentation (Count III), breach of fiduciary duty (Count IV), indemnification (Count V), and contribution (Count VI). Each of these claims arise out of the same alleged acts or omissions in Defendants' administration of the Plan.

All state laws which relate to ERISA-governed employee benefit plans, including common law or statutory claims which seek to recover plan benefits, are preempted by ERISA. See Aetna Health, et al. v. Calad, et al., 542 U.S. 200, 124 S. Ct. 2488 (2004)(state causes of action for breach of fiduciary duties are completely preempted by ERISA); Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 45-47 (1987). ERISA states that, with certain narrow exceptions, the rights, regulations and remedies afforded by ERISA "supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). The Supreme Court has repeatedly indicated that ERISA's preemptive sweep is extremely broad. See Pilot Life Insurance Co., 481 U.S. 41, 45-46 (1987) (preemption provisions of ERISA deliberately expansive); Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96 (1983)(breadth of preemption under ERISA is apparent). Therefore, provided a state law "relates to" an ERISA-regulated employee benefit plan, it will be preempted by ERISA. A state law "relates to" a benefit plan "if it has a connection with or reference to such a plan." Shaw, *supra*, 463 U.S. at 97. The Supreme Court has further indicated that ERISA preempts state laws which amount to alternative enforcement mechanisms to those in ERISA, and which present the threat of conflicting and inconsistent regulation that would frustrate uniform national administration of ERISA plans. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140-45 (1990).

Moreover, because the "related to" test is applied broadly, ERISA preemption is not limited to state laws specifically designed to affect employee benefit plans. <u>Pilot Life,</u> 481 U.S. at 45-46. Therefore, ERISA preemption covers all state laws and claims dealing with the same subject matters covered by ERISA such as reporting, disclosure, and fiduciary responsibilities. <u>Shaw,</u> 463 U.S. at 98. Whether a particular claim is characterized as a common law or statutory claim, preemption under ERISA will apply. <u>Pilot Life,</u> 481 U.S. at 48. Consequently, regardless of the name, which a plaintiff attaches to a particular claim, if that claim "relates to" an employee benefit plan, ERISA will preempt the claim and the state law claim will be subject to dismissal. <u>See id.</u>, at 47-49. Furthermore, the fact that a state cause of action authorizes remedies beyond those that ERISA§ 502(a) authorizes does not put the state law claim outside the scope of ERISA's civil enforcement mechanism and does not save it from preemption. <u>See</u> <u>Aetna Health,</u> 542 U.S. at 323.

In the First Circuit, the law is now well-settled that "[a] state law cause of action is expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan." <u>McMahon v. Digital Equip. Corp.,</u> 162 F. 3d 28, 38 (1st Cir. 1998); <u>See</u> <u>also</u> <u>Vartanian v. Monsanto Co.,</u> 14 F.3d 697, 700 (1st Cir. 1994)(a plaintiff's state law claim is preempted where the court's inquiry must be directed to the plan.). Here, the Plaintiffs cannot recover on their state law claims without proving the existence of or the terms of the Plan. Put another way, Plaintiffs cannot recover without showing that Defendants negligently administered the Plan. <u>McMahon,</u> 162 F.3d at 39. Therefore, it is beyond any reasonable dispute that the Plaintiffs' claims "relate to" the Plan within the meaning of 29 U.S.C. §1144(a), and are therefore preempted.

B.     THE PLAN AND TOWN PAINT DO NOT HAVE STANDING TO
        BRING A CLAIM UNDER ERISA

ERISA specifically enumerates which persons are empowered to bring a civil

action under Section 409 [29 U.S.C. §1109] - the Secretary, a participant, a beneficiary or

a fiduciary.    See 29 U.S.C. §1132(a)(2).  Town Paint, the employer and sponsor of the

Plan, may not bring suit under ERISA, and therefore Town Paint's ERISA claim must be

dismissed.[1]

Employers are not among the enumerated parties empowered to sue for violations

of ERISA.  See State Street Bank and Trust Company, as Trustee v. Denman Tire Corp., et

al., 240 F.3d 83, 88 (1st Cir. 2001)(holding employer and pension fund not among

enumerated parties entitled to sue for violations of ERISA); Kwatcher v. Mass. Serv.

Employees Pension Fund, 879 F.2d 957, 964-65 (1st Cir. 1989), overruled in part on other

grounds by Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 124 S. Ct. 1330

(2004)(Noting that "[e]mployers are conspicuous by their absence" from list of

enumerated entities.)  The Circuits are in "general agreement" that employers are not

empowered to bring suit under ERISA.  Kwatcher, 879 F.2d at 964, citing Plucinski v.

IAM Nat'l Pension Fund, 875 F.2d 1052, slip op. at 7 (3d Cir. 1989); Dime Coal, 796 F.2d

394, 397 (11th Cir. 1986); Whitworth Bros. Storage Co. v. Central States, Southeast and

Southwest Areas Pension Fund, 794 F.2d 221, 224-25 (6th Cir. 1986), cert. denied, 479

U.S. 1007, 107 S. Ct. 645, 93 L. Ed. 2d 701 (1986).  Therefore, Town Paint's ERISA

claim must be dismissed.

---

[1] Under ERISA, a "plan sponsor" is the employer in the case of an employee benefit plan established or
maintained by a single employer.  29 U.S.C. §1002(16)(B)(i).

Wherefore the Defendants, CIPC and Perry, respectfully request this Honorable

Court to dismiss the Plaintiffs' state law claims.  Defendants further request that this

Honorable Court dismiss the ERISA claim of the Plaintiff, Town Paint & Supply Co.,

Inc.

<div style="margin-left: 50%;">

Respectfully submitted,

The Defendants,
CIPC Systems, Inc. and
Richard A. Perry,

By their counsel,

_s/ Michele Carlucci_
George C. Rockas BBO# 544009
Michele Carlucci  BBO#655211
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

</div>

Dated:  July 1, 2005

40114.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION

|  |  |
|---|---|
| JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k)/PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| CIPC SYSTEMS, INC. and RICHARD A. PERRY, | ) ) ) |
| Defendants. | ) ) ) |

**05-40073 FDS**

RECEIPT #_414565_
AMOUNT $ _250⁰⁰_
SUMMONS ISSUED _2_
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE _5-12-05_

**COMPLAINT AND JURY DEMAND**

**Introduction**

1.      This Complaint states causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., as well as pendent causes of action under state law for professional negligence, misrepresentation, breach of fiduciary duty, contribution and indemnification.

2.      James J. Sandler, as a Trustee, participant, and beneficiary of the Plaintiff Town Paint & Supply Co., Inc. 401(k)/Profit Sharing Plan (the "Plan") together with Town Paint & Supply Co., Inc. ("Town Paint") as the Sponsor of the Plan (the "Sponsor"), bring this action on behalf of the Plan to recover damages suffered by the Plan, and its participants, beneficiaries and its Sponsor, as a result of the Defendants' breach of their fiduciary duties. The Defendants, as the Plan's Third Party Administrator ("TPA"), failed properly to conduct tests to determine

whether the Plan was in compliance with certain requirements set forth by the IRS Code and corresponding Regulations, namely requirements concerning "Top-heavy" 401(k) Profit Sharing Plans, and failed to advise the Plan, its Trustees, and its Sponsor what steps the Plan, its Trustees, and its Sponsor had to take to address the "Top-heavy" nature of the Plan. One of the steps necessary to address the "Top-heavy" nature of the Plan was to make prescribed contributions to the Plan by the Sponsor. The Defendants failed properly to advise Town Paint as to the need for any amount of contributions required to be made to the Plan. As a result, the Plan has suffered substantial injury in the form of reduced assets and lost earnings together totaling over $320,000. In exchange for an assignment of the claims against the Defendants, the Plan's Sponsor has agreed to make up the contributions and the missing earnings to the Plan.

3.       Additionally, Mr. Sandler and Town Paint have suffered, and will continue to suffer, substantial injury as a result of the Defendants' professional negligence. As a Trustee and Sponsor of the Plan, these Plaintiffs, to ensure the Plan's compliance with applicable law and to avoid personal liability, have had no choice but to seek IRS authorization to make additional, retroactive payments to the Plan. In doing so, these Plaintiffs have also incurred significant costs as well as administrative, accounting, legal, and other professional fees.

## Parties

4.       The Plan is a 401(k)/Profit Sharing Plan established by Town Paint for the benefit of its qualified participating employees.

5.       Town Paint is a Massachusetts Corporation with its principal place of business at 35 Lyman Street, Northboro. Town Paint is the Sponsor of the Plan.

6.       James J. Sandler is a citizen of Massachusetts, who resides in Framingham. James Sandler is a Trustee, participant, and beneficiary of the Plan.

2

7.      Upon information and belief, Defendant CIPC Systems, Inc. ("CIPC") is a Massachusetts Corporation with its principal place of business at 250 Hampton Street, Auburn.

8.      Upon information and belief, Defendant Richard A. Perry is a Massachusetts resident who lives at 195 Chester Street, Worcester.  Mr. Perry is an officer and director of CIPC, and holds himself out as a Chartered Financial Consultant ("ChFC"), Chartered Life Underwriter ("CLU") and a Qualified Pension Accountant ("QPA").

### Jurisdiction

9.      The Plaintiffs have jurisdiction to bring this action against the Defendants pursuant to 29 U.S.C. § 1132, including but not limited to subsection (a)(2).

10.      Pursuant to 29 U.S.C. § 1132(e), this Court has the subject matter jurisdiction to resolve the Plaintiffs' claims brought under ERISA.

11.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to resolve the Plaintiffs' other related claims as all such claims involve the same parties and arise out the same transactions, controversy, and common facts.

12.      Pursuant to 28 U.S.C. § 1132(g), in addition to entering a judgment awarding the Plaintiffs their monetary damages in the form of the missed contributions, earnings, and costs incurred in recalculating the contributions and earnings, this Court has the authority to award the Plaintiffs their costs and attorney's fees incurred in prosecuting this action along with any other such equitable relief.

### Facts

13.      Starting in or about 1992, Town Paint, as the Plan's sponsor, engaged the Defendants to serve as the TPA for the Plan, which Town Paint established as a benefit for its qualified participating employees.

14.    An integral part of serving as the Plan's TPA was (i) doing annual testing to determine whether the Plan was "top-heavy," and, (ii) if the Plan was top-heavy, as many plans are, to advise Town Paint with respect to the impact of such top-heavy status and the several potential options open to Town Paint and the Plan. Indeed, as TPA for the Plan, the Defendants undertook to perform such testing and to provide such advice to Town Paint.

15.    A defined contribution profit-sharing plan subject to the requirements of IRS Code 401(k) is deemed to be "top-heavy" if 60% or more of the benefits or account balances accrue to "key employees." Key employees include all employees who own at least 5% of the business or earn in excess of set amounts. Key employees also include all of the spouses, children, grandchildren, and parents of employees owning at least 5% of the business as described above. In general, if a plan is top-heavy in any particular year and the sponsor is making any form of contribution to the plan, a "minimum contribution" for the benefit of each participating employee must be calculated and contributed to the plan under the applicable rules and regulations. If a sponsor fails to comply with these top-heavy rules and regulations, the plan may lose its tax-exempt status. In turn, as a fiduciary of the plan with duties to each employee participant, the sponsor, and certain individual fiduciaries, could be responsible for any damages suffered by the employee participants as a result of adverse tax consequences from the loss of the plan's tax-exempt status.

16.    Pursuant to 29 U.S.C. § 1002(21)(A), by acting as the Plan's TPA, and in performing the above services and providing the above advice, the Defendants were fiduciaries of the Plan as defined by ERISA and owed the Plan the fiduciary duty to perform the above services and provide the above advice in a competent, professional manner. Similarly, the

4

Defendants owed fiduciary duties to all other fiduciaries of the Plan, including Town Paint and Mr. Sandler.

17.     In a letter dated September 3, 1993, the Defendants informed Town Paint that they had completed the top-heavy testing for the Plan's Fiscal Year 1992. (A true and accurate copy of this letter is attached hereto as Exhibit A.) In this letter, the Defendants address "potential top-heavy issues," but assured Town Paint that the Plan was not top-heavy for that year.

18.     The September 3, 1993 letter also stated that future top-heavy status for the Plan may be delayed or avoided by having two key employees, Messrs. David and James Sandler, withdraw amounts "rolled over" into the Plan from a different plan, the Sandler Realty plan. The letter did not note that any other actions, such as the withdrawal of benefits to employees, were needed to avoid top-heavy status.

19.     In response to the September 3, 1993 letter, and based on the Defendants' advice, Town Paint and Messrs. David and James Sandler withdrew from the Plan the amounts rolled over from the Sandler Realty plan. Because they were not advised to do anything else by their TPA, they took no other action to avoid or delay top-heavy status for the Plan.

20.     The September 3, 1993 letter was erroneous. In fact, in 1992, the Plan was already top-heavy. Because the Plan was already top-heavy, Town Paint (the Sponsor) was required to make minimum "top-heavy" contributions to the Plan and the failure to do so jeopardized the Plan's on-going tax-exempt status. Moreover, the removal of the "rolled-over" Sandler Realty amounts did not cure the Plan's top-heavy status. There were several actions that Town Paint, as the Sponsor, could have taken in 1993 to avoid any future liability for top-heavy

contributions for the Plan, but not having been advised of the same by the Defendants, Town Paint took none of the available steps to eliminate its future liability for minimum contributions.

21.    In each year subsequent to 1993, the Defendants, pursuant to their engagement as the Plan's TPA, performed top-heavy testing for the Plan for the prior fiscal year. At no time did the Defendants advise the Plaintiffs of the steps they could take to prevent any liability for top-heavy minimum contributions.

22.    In 2004, Town Paint engaged its accountant and an outside record-keeper to review the Plan's records. Based on this review, Town Paint's accountant determined that the Defendants had not properly tested the top-heavy status of the Plan, and that the Plan had likely been top-heavy as early as 1992.

23.    Subsequently, the Plaintiffs hired a new TPA to (i) retest the top-heavy status of the Plan and (ii) to calculate the amounts of contributions and earnings Town Paint was required to contribute retroactively to the Plan in order to protect the Plan's tax exempt status.

24.    The new TPA determined that the Plan was indeed top-heavy as early as 1991.

25.    As a result, Town Paint, to protect the Plan's top-heavy status, voluntarily informed the IRS of the recalculations and requested authorization from the IRS to make retroactive payments to the Plan to protect the Plan's tax-exempt status. These retroactive payments include $251,993.95 in additional minimum top-heavy contributions and $71,948.92 in earnings on the contributions. These amounts are calculated as set forth on Exhibit B.

26.    To date, the Plaintiffs have incurred a significant amount of professional fees and costs to retest the top-heavy status of the Plan and to prepare and submit an application to the IRS for authorization to make retroactive payments. These fees and costs include over $15,000 in legal fees, $20,000 in new TPA fees, several thousands of dollars in accountants' fees, and a

6

$5,000 IRS application fee. These amounts do not include the substantial legal fees that

Plaintiffs will incur as a result of their efforts to recover against the Defendants.

COUNT I
(Breach of Fiduciary Duty to the Plan, Its Sponsor, Participants,
Beneficiaries, and Trustee under ERISA)

27.    The Plaintiffs incorporate by reference all of the allegations contained in

paragraphs 1 through 26, above.

28.    As described above, each of the Defendants was a fiduciary of the Plan.

29.    Among other things, Section 404(1) of ERISA requires a fiduciary to:

"discharge his duties with respect to a plan solely in the interest of the participants and
beneficiaries and --

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B)   with the care, skill, prudence, and diligence under the circumstances then
prevailing that a prudent man acting in a like capacity and familiar with such matters
would use in the conduct of an enterprise of a like character and with like aims . . . ."

30.    Pursuant to 29 U.S.C. § 1109:

"Any person who is a fiduciary with respect to a plan who breaches any of the
responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall
be personally liable to make good to such plan any losses to the plan resulting from each
such breach, and to restore to such plan any profits of such fiduciary which have been
made through use of assets of the plan by the fiduciary, and shall be subject to such other
equitable or remedial relief as the court may deem appropriate, including removal of such
fiduciary."

31.    Specifically, the Defendants had a fiduciary duty to the Plan, its Sponsor,

participants, beneficiaries, and Trustees properly to conduct top-heavy testing and to advise the

Plan, and its Sponsor and Trustees, as to the appropriate amount of contributions to be made to the Plan.

32.     The Defendants breached their fiduciary duties by failing properly to conduct top-heavy testing and by failing to provide adequate advice to the Plan, its Sponsor and its Trustees on how to avoid liability for top-heavy contributions.

33.     As a result of the Defendants' breach of their duties, the Plan, its Sponsor, participants, beneficiaries, and Trustees have suffered significant damages. Specifically, the Plan has been under-funded to the extent that Town Paint should have made additional contributions to the Plan due to the Plan's top-heavy status. Further, the Plan lost earnings that would have been generated on the additional contributions that should have been made. This has negatively impacted the amount of assets of the Plan designated for its participants and beneficiaries. Finally, the Plan and Town Paint has incurred significant professional fees as the result of the retesting of the Plan and the calculation of the additional contributions and lost earnings.

## COUNT II
(Professional Negligence to the Plan, Town Paint and Mr. Sandler)

34.     The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 33, above.

35.     The Defendants were engaged by Town Paint (the Sponsor), the Plan, and Mr. Sandler to provide services as the TPA of the Plan. Under the terms of this engagement, the Defendants were hired to test the top-heavy status of the Plan and to provide advice to Town Paint, the Plan, and Mr. Sandler should it be determined that the Plan was top-heavy.

36.    As such, the Defendants owed Town Paint, the Plan, and Mr. Sandler a duty of care to advise it and to perform professional services in a reasonable and diligent manner in accordance with the reasonable practice of similar professionals in a comparable situation.

37.    As described herein, the Defendants breached their duty of care to Town Paint, the Plan, and Mr. Sandler and failed to provide professional services in a reasonable and diligent manner in accordance with the reasonable practice of similar professionals in a comparable situation. The Defendants' breach of their duties of care constitute professional negligence.

38.    As a result of the Defendants' breach of their duty their and professional negligence, Town Paint, the Plan, and Mr. Sandler have suffered significant damages as described herein.

## COUNT III
### (Negligent Misrepresentation to Town Paint, the Plan, and Mr. Sandler)

39.    The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 38, above.

40.    In providing professional services for the Plaintiffs, namely Town Paint, the Plan, and Mr. Sandler, the Defendants made material representations, including those concerning the top-heavy status and the administration of the Plan. The Defendants, however, knew or should have known that their representations to the Plaintiffs were incorrect. The Defendants also failed to advise the Plaintiffs of various matters on which they had an obligation to advise the Plaintiffs.

41.    At all relevant times, the Plaintiffs reasonably relied upon the Defendants' representations in making, or not making, contributions to the Plan.

42.    As a direct result of the Defendants' misrepresentations, the Plaintiffs have suffered significant damages as described herein.

9

## COUNT IV
### (Breach of Fiduciary Duty to Town Paint and Mr. Sandler)

43.    The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 42, above.

44.    The Defendants, having been retained by Town Paint (the Sponsor) and Mr. Sandler, and as a fiduciary to the Plan, owed a fiduciary duty to Town Paint as the Plan's Sponsor and to Mr. Sandler as the Plan's Trustee.  Specifically, the Defendants had duties properly to test the top-heavy status of the Plan and to provide advice to Town Paint and Mr. Sandler should it be determined that the Plan was top-heavy.

45.    As described herein, the Defendants breached their fiduciary duties to Town Paint and Mr. Sandler.

46.    As a result of the Defendants' breaches of their duties, Town Paint and Mr. Sandler have suffered significant damages as described herein.

## COUNT V
### (Indemnification)

47.    The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 46, above.

48.    Due to the actions of the Defendants, Town Paint is required, as described above, to make additional, retroactive contributions and payments to the Plan.  Additionally, Town Paint and Mr. Sandler may be subject to future claims based on their respective positions as the Sponsor and Trustees, and therefore fiduciaries, of the Plan.  Such liability may occur if, *inter alia*, the IRS denies Town Paint's application to make retroactive payments to the Plan to preserve its tax-exempt status.

10

49.     Because the contributions and payments required to be made by Town Paint and any past or present claims against Town Paint and/or Mr. Sander concerning the under-funding of the Plan are the direct result of the actions of the Defendants, the Defendants are obligated to indemnify Town Paint and Mr. Sandler with respect to such contributions, payments, and claims.

### COUNT VI
### (Contribution)

50.     The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 49, above.

51.     Due to the actions of the Defendants, Town Paint is required, as described above, to make additional, retroactive contributions and payments to the Plan. Additionally, Town Paint and Mr. Sandler may be subject to future claims based on their respective positions as the Sponsor and Trustee, and therefore fiduciaries, of the Plan. Such liability may occur if, *inter alia*, the IRS denies Town Paint's application to make retroactive payments to the Plan to preserve its tax-exempt status.

52.     To the extent that Town Paint is responsible to make such contributions or payments, and Town Paint and Mr. Sandler are responsible for damages arising in part or in whole out of the conduct of the Defendants, the Defendants are jointly responsible for such contributions, payments or damages.

53.     Therefore, the Defendants are obligated to Town Paint and Mr. Sandler for their pro-rata share of the contributions, payments or damages pursuant to G.L. c. 231B.

WHEREFORE, the Plaintiffs demand judgment as follows:

A. Judgment against the Defendants in favor of the Plan, and its assigns, participants, beneficiaries, Sponsor, and Trustee on Count I for the full amount of the damages suffered by the Plan, plus interest;

B. Judgment against the Defendants in favor of the Plaintiffs on Counts II, III, and IV for the full amount of damages suffered, plus interest;

C. Judgment against the Defendants in favor of Town Paint and Mr. Sandler on Counts V and VI requiring indemnification, or in the alternative, contribution from the Defendants.

D. An award to the Plaintiffs of their attorney's fees and costs under applicable law; and

E. Any other relief that this Court deems just and appropriate.

## JURY DEMAND

The Plan demands a trial by jury on all claims so triable.

> JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k)/PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC.,
>
> By their attorneys,
>
> Richard J. Yurko (BBO# 538300)
> Matthew C. Welnicki (BBO# 647104)
> YURKO & SALVESEN, P.C.
> One Washington Mall, 11th Floor
> Boston, MA 02108-2603
> (617) 723-6900

Dated: May _11_, 2005

12



**BPC Systems Inc.**
Benefit Plan Consultants & Administrators

HAMPTON PLACE, 250 HAMPTON STREET, AUBURN, MA 01501  508-832-2299  FAX 508-832-9885

September 3, 1993

Mr. David Lappin
Town Paint & Supply Co., Inc.
35 Lyman Street
Northboro, MA  01532

Re:    Sandler Realty Trust Rollover Accounts

Dear David:

Hope you had an enjoyable vacation and that you have had the opportunity to catch up with your work this past week.  As promised, I am writing concerning the potential "top heavy" issues with regards to the company's 401(k) plan.

The Internal Revenue Code (Section 416(a)) provides that a plan is deemed to be "top heavy" if the assets allocated to the key employees equals or exceeds 60.00% of the total of plan assets.  If this occurs, the company is **required** to make a contribution equal to 3.00% of compensation for **all eligible employees**.  It is critical to remember that this includes not only those employees who are participating in the 401(k) plan by virtue of payroll deductions, but all employees who have satisfied the age and service requirements (age 21 with one year of service).  If the plan had been "top heavy" last year, this would have meant a mandatory company contribution of $46,301.74 (total eligible compensation of $1,543,391.34 x .03).

In order to delay, and hopefully potentially avoid, the plan becoming "top heavy" it is essential that the rollover amounts for Jim and David Sandler be withdrawn from the plan and placed in IRA accounts.  In fact, these funds should have never be rolled over into the 401(k) plan in the first place.  Funds for any other key employees who are no longer employed should also be rolled over to IRA accounts (such as, James Mark Sandler and Stephanie Sandler), as this would provide additional help in this area.  These additional distributions, however, would still need to be taken into account for the next five (5) years.  However, it is better to start now than alter.

With that end in mind enclosed please find a summary sheet for an annuity contract that may be useful as a rollover vehicle.  This contract maintains the same type of fixed rate account that both Jim and David have been using for their existing 401(k) plan monies.  Please note that any surrender charges are waived for a bona fide retirement or death benefit payment.

Mr. David Lappin
September 3, 1993
Page 2


Once you have had the chance to review this material with Jim and David please let me know how they would like to proceed, or if they have any questions. Obviously alternative investment accounts are available if they desire something other than fixed rate accounts.

Sincerely,


Richard A. Perry, CLU, ChFC, QPA
Executive Vice President

RAP/jh



### Town Paint & Supply Co., Inc.
### Top Heavy Summary

| Year | Top Heavy Percentage | Top Heavy Contribution | Gain/Loss Percentage | Gain/Loss Contribution |
|------|------|------|------|------|
| 1991 | 67.94% | 15,734.24 | 7.53% | - |
| 1992 | 62.87% | 19,668.71 | 6.29% | 1,152.24 |
| 1993 | 65.23% | 16,700.81 | 7.39% | 1,678.60 |
| 1994 | 63.86% | 16,772.45 | 5.49% | 3,259.75 |
| 1995 | 66.24% | 22,585.14 | 6.82% | 5,786.93 |
| 1996 | 66.25% | 23,556.02 | 3.90% | 4,584.18 |
| 1997 | 66.83% | 15,419.36 | 2.69% | 3,418.98 |
| 1998 | 68.49% | 20,504.79 | 6.71% | 11,394.22 |
| 1999 | 65.86% | 21,507.36 | 7.91% | 18,976.07 |
| 2000 | 66.68% | 20,234.62 | 3.26% | 1,569.28 |
| 2001 | 69.35% | 19,822.23 | 2.76% | 1,223.69 |
| 2002 | 75.95% | 18,775.82 | 1.05% | (6,912.35) |
| 2003 | 78.62% | 20,712.41 | 7.12% | 25,817.32 |
| | | 251,993.95 | | 71,948.92 |

♣JS 44 (Rev. 11/04)

# CIVIL COVER SHEET 05 - 40073 FDS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

James J. Sandler, Individually and as Trustee of the Town Paint & Supply Co., Inc. 401(k)/Profit Sharing Plan, and Town Paint & Supply Co., Inc.

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Richard J. Yurko, Yurko & Salvesen, One Washington Mall, Boston, MA 02108 (617) 723-6900

## DEFENDANTS

CIPC Systems, Inc. and Richard A. Perry

County of Residence of First Listed Defendant **Worcester**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 29 U.S.C. s. 10

Brief description of cause: Breach of Fiduciary Duties - and related causes of action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 5/11/05    SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only)

    James J. Sandler et al. v. CIPC Systems, Inc. et al.

    05 - 40073. FDS

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    ___  I.     160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    X    II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

    ___  III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ___  IV.    220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___  V.     150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐      NO  X

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

    YES ☐      NO  X

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐      NO ☐  n/a

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐      NO  X

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☐      NO  X

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☐          Central Division ☐          Western Division ☐

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☐          Central Division X          Western Division ☐

8.  If filing a Notice of Removal- are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐      NO ☐  n/a

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ____ Richard J. Yurko, Esq. and Matthew C. Welnicki, Esq., Yurko & Salvesen, P.C.

ADDRESS ____ One Washington Mall, 11th Floor, Boston, MA 02108

TELEPHONE NO. ____ (617) 723-6900