UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION

| | |
|---|---|
| JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k)/PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CIPC SYSTEMS, INC. and RICHARD A. PERRY,<br><br>Defendants. | Civ. No. 05-40073 |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

The Plaintiffs James J. Sandler ("Sandler"), both individually and as Trustee, participant, and beneficiary of the Town Paint & Supply Co., Inc. 401(k)/Profit Sharing Plan (the "Plan"), and Town Paint & Supply Co., Inc. ("Town Paint") as the sponsor of the Plan (the "Sponsor"), hereby submit their opposition to the defendants' Partial Motion to Dismiss.

### Introduction

Apparently conceding that Sandler has standing as a participant, a beneficiary, and a fiduciary of the Plan to bring this action against them under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), defendants have nonetheless filed a "partial" motion to dismiss seeking to have this Court decide (1) that all pendent common law claims asserted in the complaint are preempted by ERISA, and (2) that the Plan Sponsor, Town Paint, has no standing whatsoever under ERISA or any common law theory. In making their argument,

the defendants have ignored several key facts and have advanced several erroneous propositions of law.  First, while in the motion the defendants appear to concede that they were plan fiduciaries,[1] the defendants contend erroneously that, as a matter of fact, they served *exclusively* as plan fiduciaries.  This is plainly incorrect.  In addition to serving as the Third Party Administrator ("TPA") of the Plan, the defendants also provided advice directly to Town Paint and to Sandler, individually.  The defendants cannot use their role as TPA of the Plan to insulate themselves from liability arising from their separate advisory role to Town Paint and Sandler, for which Town Paint paid them.  Second, in making their arguments against standing asserted by Town Paint, defendants also ignore that Sandler, as Trustee of the Plan, has assigned the Trustee's and the Plan's claims against the defendants to Town Paint.  (Complaint at ¶ 2.)  Third, the defendants have misstated and misconstrued the law regarding ERISA preemption.  Rather than the "well-settled" law that the defendants portray, the law on ERISA preemption is in a state of ongoing ferment, as typified by Chief Judge Young's decision in Miara v. First Allmerica Financial Life Ins. Co., _ F. Supp. 2d _, 2005 WL 1463299 (D. Mass. June 16, 2005).  As Chief Judge Young demonstrated in Miara, which was decided two weeks before defendants' motion was filed, the type of direct claims asserted by Town Paint and Sandler here are not preempted.  Certainly, there is no basis for holding that the common law claims[2] are necessarily preempted where, as here, there are ample facts yet to be developed in discovery that would render preemption wholly inapplicable.

   There can be no mistaking the defendants' goal in filing the partial motion to dismiss.  The motion is an attempt by the defendants to use ERISA to insulate themselves from, among

---

[1] However, in their Answer, they say they were *not* Plan fiduciaries.  (Compare Partial Answer and Complaint at ¶ 28.)

[2] Plaintiffs refer to the non-ERISA claims as common law claims because they can arise either under state common law or under federal common law.

other things, their failure to provide proper professional services and advice to Sandler and Town Paint. However, ERISA was not intended to be used by defendants as a shield from liability for their wrongful acts. The damages suffered here by the plaintiffs are significant; the plaintiffs are not precluded from seeking full relief.

Town Paint is a closely-held, family-run business with some fifty-four employees, typical of the modest-sized businesses that employ more that half the private sector workers in the United States and approximately three-quarters of the private sector workers in Massachusetts.[3] It is critical to our aging population that such businesses offer retirement plans for their workers.[4] Unlike the IBMs and GEs that make up the Dow Jones Industrial Average, these closely-held businesses do not have large "HR" departments, in-house counsel, and internal experts on pension plans, but rather these closely-held businesses rely on consultants to advise them on choosing, setting up, maintaining, altering, and discontinuing their plans. See, e.g., Miara, supra. When those consultants provide their advice to the company, like Town Paint, they owe a professional duty to the company, just like any other professional would, be it an accountant, lawyer, or actuary. Id. That duty is separate and distinct from the duty which the TPA owes to the Plan, its participants, beneficiaries, and trustees. Id.

The proposition advanced by the defendants here is a breath-taking one. Stripped to their argument's essence, the defendants suggest that any professional who advises a company and its principals can insulate itself from all common law liability for its advice if it has the good fortune to serve also as the TPA for the company's pension plan. That is not the law. Where, as

---

[3] See Statistics from the United States Small Business Administration at http://www.sba.gov/aboutsba/sbastats.html and the Commonwealth of Massachusetts at http://www.mass.gov/Adbt/docs/MA_business_statistics.pdf.

[4] See Opening Statement of Honorable Sam Johnson, Chairman of the House Committee on Education and the Workforce introducing the Comprehensive Retirement Security and Pension Reform Act of 2001 (enacted as part of the Economic Growth and Tax Relief Reconciliation Act of 2001, P.L. 107-16, §§ 601 et seq.), April 5, 2001.

here, the defendants wore several hats, they can be sued under ERISA for what they did as the TPA and they can be sued under common law for what they did and what advice they gave (or failed to give after undertaking a duty to do so) to the company and its principals.

## Facts

The following facts are set forth in more detail in the plaintiffs' complaint.

### A.    Defendants Provided Services to Town Paint, Sandler, and the Plan

Town Paint had established its Plan well prior to 1992. Beginning in 1992, Town Paint retained the services of the defendants. (Complaint at ¶ 13.) The defendants' tasks were several. On the one hand, Town Paint hired and paid the defendants to serve as the Plan's TPA. (Id.) Accordingly, the defendants were to perform annual testing to determine whether the Plan was "top-heavy." (Id. at ¶ 14.) But the defendants' obligations did not end with testing to determine if the Plan was top-heavy. (Id.) If the Plan were top-heavy or if it were going to become top-heavy, as so many plans are in closely-held businesses, the defendants were to advise Town Paint and its principals about the options open to them to address such top-heavy status.[5] (Id.) Once a plan sponsor is advised of the present and likely future top-heavy status of a plan, its consultant typically presents the sponsor with a range of options for addressing that status, each of which would preserve the tax-exempt status of the plan. This is what these defendants undertook to do and this is what they failed to do. (Id. at ¶¶ 14, 20, 21.) Obviously, this is advice to be provided to the sponsor and, in a closely-held corporation, its principals.

---

[5] If a plan is top-heavy and the sponsor takes no other steps to address the status, the sponsor must make a minimum contribution on behalf of each participant if the sponsor makes any contributions at all. See IRS Code § 416. But that is not the sponsor's only option. The sponsor could discontinue ongoing sponsorship of the plan. The sponsor could maintain the plan but halt all sponsor contributions thereto. The sponsor could also elect to make minimum contributions to the plan from funds it otherwise would have paid to employees as direct compensation. The sponsor could also incentivize non-management employees to make better use of the plan.

4

B.  **Defendants Served as Fiduciaries of the Plan and also Provided Professional Services and Advice to Town Paint and Sandler**

Pursuant to ERISA, 29 U.S.C. § 1002(21)(A), by acting as the Plan's TPA, the defendants were fiduciaries of the Plan. (Id. at ¶16.) As noted above, in addition to being the Plan's TPA, the defendants also provided services and advice directly to Town Paint and Sandler. (Id. at ¶ 17.) For example, in a letter dated September 3, 1993 *to Town Paint*, the defendants informed Town Paint that they had completed the top-heavy testing for the Plan's Fiscal Year 1992. (Id. at ¶ 17 and Exhibit A.) In this letter, the defendants purported to address "potential top-heavy issues," but assured Town Paint that the Plan was not top-heavy for that year. (Id.) The September 3, 1993 letter also stated that future top-heavy status for the Plan may be delayed or avoided altogether by having two key employees, Messrs. David and James Sandler, withdraw amounts "rolled over" into the Plan from a different plan, the Sandler Realty Plan. (Id. at ¶ 18.) On its face, the defendants' September 3, 1993 letter was written to be "reviewe[ed]…with Jim and David [Sandler]," the company's principals. (Id.) In response to the September 3, 1993 letter, and based on the defendants' advice to Town Paint and Messrs. David[6] and James Sandler, the Sandlers withdrew from the Plan the amounts rolled over from the Sandler Realty Plan. (Id. at ¶ 19.) The September 1993 letter is just one example of the communications and advice from the defendants directly to Town Paint and Sandler.

C.  **Defendants Failed to Provide Proper Services and Advice**

Contrary to the explicit advice of the defendants, in 1992, the Plan was already top-heavy. (Id. at ¶ 20.) Because the Plan was already top-heavy, if <u>any</u> sponsor contributions were being made that year, Town Paint (the Sponsor) was required to make minimum "top-heavy" contributions to the Plan and a failure to do so jeopardized the Plan's on-going tax-exempt status.

---

[6] David Sandler is not a plaintiff herein because he passed away shortly before this action was filed.

5

(Id.) Of course, because the defendants never advised Town Paint of the top-heavy status, no such top-heavy minimum contributions were made. Moreover, the removal of the "rolled-over" Sandler Realty amounts did not prevent or cure the Plan's future top-heavy status. (Id.) As noted above, there were various actions that Town Paint, as the Sponsor, could have taken in 1993 and thereafter to avoid any ongoing future liability for top-heavy contributions for the Plan, but not having been advised of the same by the defendants, who undertook to do so, Town Paint took none of the available steps to eliminate its current and future liability for minimum contributions. (Id.) In each year subsequent to 1993, the defendants incorrectly performed top-heavy testing for the Plan. (Id. at ¶ 21.) Despite their obligation to do so, at no time did the defendants advise Town Paint or Sandler that the Plan was top-heavy or of the steps they could take to prevent any liability for top-heavy minimum contributions. (Id.)

In 2004, Town Paint discovered that the defendants may not have properly tested the top-heavy status of the Plan, and that the Plan may have been top-heavy for many years. (Id. at ¶ 22.) Subsequently, the plaintiffs hired new consultants (i) to test whether the Plan was top-heavy, and (ii) if the Plan were top-heavy, to advise them on the options open to preserve the Plan's tax-exempt status. The new consultants determined that the Plan was indeed top-heavy as early as 1991. (Id. at ¶ 24.) Because the top-heavy status had gone on so long undetected, the only option to preserve the Plan's tax-exempt status was to calculate the amounts of minimum contributions and earnings Town Paint should contribute retroactively to the Plan to protect the Plan's tax-exempt status. (Id. at ¶ 23.)

The missing minimum top-heavy contributions totaled over $250,000 and the missing earnings on those contributions totaled over $70,000. (Id. at ¶ 25 and Exhibit B.) These amounts were and are staggering to a small plan and a closely-held business. At this late date,

the only option available to the plaintiffs was to apply to the IRS for permission to make up these absent payments. The plaintiffs incurred substantial legal fees, consultants' fees, and a $5,000 application fee to the IRS in an effort to cure these defendant-induced errors. To protect the tax-exempt status of the Plan, Town Paint agreed to advance such sums in exchange for an assignment of the Plan's and its Trustee's claims against CIPC and Perry. (Id. at ¶ 2.)

## Argument

### I.   Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the well-pleaded factual allegations of the complaint, as well as any reasonable inferences to be drawn in the plaintiff's favor. See American Tel. & Tel. Co. v. IMR Capital Corp., 888 F. Supp. 221, 251 (D. Mass. 1995)(Gertner, J.); Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(emphasis added). There is no need whatsoever for the plaintiff to plead detailed evidence. "[I]t is enough for the complaint to contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Charbonnier v. Amico, 367 Mass. 146, 152 (1975); see also, Langadinos v. American Airline, Inc.,199 F.3d 68, 72-73 (1st Cir. 2000); American Glue & Resin v. Air Products & Chemicals, Inc., 835 F. Supp. 36, 40 (D. Mass. 1993)(Gorton, J.). And, of course, plaintiffs are allowed to plead alternative theories. Fed. R. Civ. P. 8(e).

If a complaint's factual allegations are sufficient to state a cause of action under *any* legal theory, a motion to dismiss the complaint must be denied. Finne v. Paul Revere Life Insurance Co., 981 F. Supp. 57, 58 (D. Mass. 1997)(emphasis added.) There is no requirement that the

7

plaintiff indicate the precise statute or case on which he will eventually rely. Samos v. Dean Witter Reynolds, Inc., 772 F. Supp. 715, 717 (D. Mass. 1991)(Pettine, J.), citing Turner v. Leesona Corp., 673 F. Supp. 67, 68 (D.R.I. 1987); Analog Devices, Inc. v. Allied Van Lines, Inc., 1996 WL 208463, at 2 (D. Mass. 1996)(Wolf, J.)(denying motion to dismiss based on preemption). On the contrary, "a complaint is sufficient against a motion to dismiss, if it appears from the complaint that a plaintiff may be entitled to any form of relief." Analog Devices, supra, citing, 5 Wright & Miller, §1219 (collecting cases). This is true even if the plaintiff has demanded relief according to an inappropriate theory. Analog Devices, supra, citing, Newman v. Silver, 713 F.2d 14, 15 n. 1 (2nd Cir. 1983).

**II.     Town Paint Has Standing, Both Derivatively By Way Of Assignment And Directly, To Assert ERISA Claims**

As the defendants do not contest in their motion, Sandler as Trustee, participant, and beneficiary of the Plan has standing to pursue claims on behalf of the Plan under ERISA for breach of fiduciary duty against the defendants. See 29 U.S.C. § 1132(a). Town Paint is joined as a plaintiff in this Count as the assignee of Sandler's rights as Trustee.[7] (See Complaint at ¶ 2.) Town Paint is certainly a proper plaintiff, both as an assignee and in its own right.

Although ERISA lists certain enumerated potential plaintiffs, the First Circuit has permitted these enumerated potential plaintiffs to assign their rights in accordance with traditional principles of contract law. City of Hope National Medical Center v. HealthPlus, Inc., 156 F.3d 223, 227-28 (1st Cir. 1998). A party not otherwise included in ERISA's list of potential plaintiffs may acquire "derivative standing" by "standing in the shoes" of its assignor. See Cole v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 227 F. Supp. 2d 190,

---

[7] Sandler, as Trustee of the Plan, remains named as plaintiff in Count I as a nominal party and reserves the right to personally assert this claim to the extent that Town Paint is dismissed as a plaintiff.

8

196 (D. Mass. 2001)(Wolf, J.). To demonstrate derivative standing, an employer need only state a "colorable claim" that it is an assignee. See I.V. Services of America, Inc. v. INN Development & Management, Inc., 182 F.3d 51, 54 n.3 (1st Cir. 1999). Permitting the assignment of ERISA claims is entirely consistent with Kwatcher v. Mass. Serv. Employees Pension Fund, 879 F.2d 957 (1st Cir. 1989) – a case relied upon by the defendants. City of Hope, 156 F.3d at 227-28, citing Kwatcher, 879 F.2d at 965. In fact, assignments of claims are especially appropriate where the assignment promotes the purposes of ERISA and "facilitates rather than hampers" the employees' receipt of benefits. City of Hope, 156 F.3d at 226 (citing authorities).

Here, Town Paint has been assigned the right to bring the ERISA claims in Count I for the benefit of the Plan and its Trustee. (Complaint at ¶ 2.) Given the relative resources of the parties, Town Paint is in the best position to prosecute the claims it has been assigned. Town Paint, therefore, has derivative standing to assert the claims for breach of fiduciary duty under ERISA on behalf of the Plan and its Trustee.

Moreover, it is also clear that Town Paint has its own independent standing to bring claims in this action. With respect to the common law claims that accrue to Town Paint for the improper advice it received from the defendants, Town Paint is, of course, the proper party to assert such claims. See Miara, discussed, *infra*, at sec. III.1.[8] Further, with respect to the ERISA claims, such claims may be brought by any fiduciary of the Plan. See 29 U.S.C. § 1132(a). Although the plan sponsor is not an enumerated fiduciary automatically entitled to standing, the question of who is, in fact, a fiduciary is determined very practically by whoever actually

---

[8] It would appear that the defendants' argument is that such claims are pre-empted, which they are not. See sec. III.1, *infra*. Hopefully, one would trust that the defendants would concede that if the claims are not preempted, then the party that received and relied upon the erroneous advice has standing to sue. See, e.g., Nycal Corp. v. KPMG Peat Marwick, LLP, 688 N.E.2d 1368, 1372-74 (Mass. 1998.)

9

exercises discretionary authority over the Plan. If Town Paint exercised such discretionary authority (such as in the selection of the TPA), then Town Paint certainly has standing to sue on the Plan's behalf. See, e.g., Framingham Union Hosp., Inc. v. Travelers Ins. Co., 721 F. Supp. 1478, 1486-87 (D. Mass. 1989)(Skinner, J.)(employer had standing as fiduciary to bring ERISA claims *and* could assert state law claims that were not preempted by ERISA). Plainly, many facts may be developed in discovery that fully substantiate Town Paint's independent standing to sue under ERISA.

### III. Plaintiffs' Common Law Claims Are Not Preempted By ERISA

1. Defendants' View of ERISA Preemption is Overly Broad and Plaintiffs' Common Law Claims are Not Preempted

The defendants take an overly broad, breath-taking view of ERISA preemption. They argue for a result and rule in which any defendant who acts sometimes on behalf of a plan as a plan fiduciary is automatically immune from other claims by other parties arising from similar conduct. The defendants' argument, however, has been consistently rejected by the courts, including most recently by Chief Judge Young of this Court in Miara, _ F. Supp. 2d _, 2005 WL 1463299 (D. Mass. June 16, 2005).

In Miara, Judge Young ruled that a participant's claims concerning misrepresentations and malpractice by a plan administrator were *not* preempted by ERISA. Id. at * 40. Judge Young surveyed authority from across each of the circuits and identified several examples where state common law tort and contract claims were not preempted even though the defendant had provided services to the ERISA plan or to the plan's participants and beneficiaries. Id. In doing so, Judge Young recognized that the Supreme Court has more recently avoided the application of the unnecessarily strict "relates to" standard since Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41

(1987) – one of the key cases relied upon by the defendants.[9] Id. at * 7, citing New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995); see also Boggs v. Boggs, 520 U.S. 833, 841 (1997)(court applied a "conflict preemption" standard as opposed to a broader "field preemption" standard; under conflict preemption standard, state law claims are only preempted if they are in direct conflict with and frustrate the purpose of ERISA). "A cursory and uncritical reference to a plan . . . cannot be said to pull all of [plaintiff's] state claims under the 'long shadow' of ERISA preemption." Id. at * 38.

Most notably, Judge Young identified numerous instances in which claims for misrepresentation and malpractice against professionals providing services to a plan, or in connection with a plan, have been found *not* to be preempted by ERISA. Id. at ** 30-35 (collecting authorities), citing Travelers, 514 U.S. at 646 ("[i]t is hard to imagine, in earnest, that Congress intended to preempt such a broad historic, and traditional area of state law [misrepresentation]") and quoting Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1152-53 (3rd Cir. 1989)("Congress did not intend to preempt a whole panoply of state law in this area . . . . ERISA does not generally preempt state professional malpractice actions"). Judge Young cited these examples to demonstrate that such common law claims should not automatically be preempted because courts should not allow ERISA to provide a shield to protect professionals from "state laws of general applicability that are intended to ensure that professional services are rendered with reasonable diligence." Id. at * 30, quoting Berlin City Ford, Inc. v. Roberts Planning Group, 864 F. Supp. 292, 296 (D.N.H.

---

[9] The defendants also cite to McMahon v. Digital Equip. Corp., 162 F.3d 28, 38 (1st Cir. 1998), for the assertion that a cause of action is preempted if the plaintiff "must prove the existence of, or specific terms of, an ERISA plan." In McMahon, the plaintiff was an employee seeking to recover certain benefits denied to her by her purported ERISA plan. Id. at 31-32. The court in McMahon found that most of the state law claims were preempted because they required *proof of the terms* of the plan, namely, her rights under the plan to recover specific benefits identified from the terms of the plan. Id. at 38-39. Notably, the court did not preempt one of the plaintiffs claims to the extent that the plaintiff could demonstrate a relationship or obligation not based on the intricate terms of the plan. Id. Here, the Plaintiffs' common law claims do not require proof of the intricate terms of the Plan.

11

1994). This is why, generally, "state law claims against nonfiduciaries who provide services to plans, such as accountants, actuaries, attorneys, and consultants, are not preempted." Jayne E. Zanglein and Susan J. Stabile, ERISA Litigation, The Bureau of National Affairs, Inc., Ch. 14.VI., p. 318 (2003 & Supp.); see also Framingham Union Hosp, 721 F. Supp. at 1490 (common law claims brought by employer, who was also ERISA fiduciary, were not preempted).

When faced with common law claims that potentially "relate to" ERISA plans, such as those in Miara and this present action, at the proper time,[10] the Court should weigh three important considerations prior to making a determination on preemption. First, the Court should consider the source of the damages. Thus, the Court must determine if the damages were the result of the actual administration of the plan or rather statements and actions made to induce participation in, procurement of, alteration to, or continuation of the plan. See Miara, 2005 WL 1463299 at * 28. Where, as here, the independent claim focuses on inducing participation, procurement, continuation, or the specific structuring of the plan, preemption is not appropriate. Id., citing Morstein v. National Insurance Services, Inc., 93 F.3d 715, 723-724 (11th Cir. 1996)("[i]f ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans would no longer be able to rely on the representations of the insurance agent regarding the terms of the plan. These employees, whom Congress sought to protect, will find themselves unable to make informed choices regarding available benefit plans . . . .").

Second, at the proper time, the Court must consider the relationship among the parties. In situations where the defendant's complained of services do not arise to the level of discretionary control over the administration of the plan, the defendant is not in any real fiduciary relationship

---

[10] As set forth, infra, at Section III.4, now is not the time to assess preemption in advance of discovery and the facts that may be developed therefrom.

under ERISA with the plaintiff and is not performing ERISA fiduciary functions in that instance. See Id. at ** 29-30. Absent this fiduciary status, there should be no reason why ERISA should preempt common law claims. Id., citing Berlin City Ford, 864 F. Supp. at 296 (courts should not "construe ERISA to protect non-fiduciaries from state laws of general applicability"). In this case, the calculation of whether the Plan was top-heavy may well be determined to be a ministerial rather than fiduciary task, a finding that would entirely preclude preemption. Moreover, in giving advice to the Sponsor, Town Paint, the defendants were not acting as fiduciaries of the Plan, but as advisors to the entity that had the power to discontinue, shape, or structure the Plan.

Third, at the proper time, this Court should consider whether preemption would promote ERISA's goal of protecting employee interests in benefit plans. Id. at * 36. Typical ERISA claims include requests for benefits, enforcement of rights under the plan, challenging the terms of the plan, and enforcement of rights to participate in a plan. Id. at *37. Other interests such as the right to receive competent professional advice free from misrepresentations fall outside of ERISA's goals. Id. ERISA was designed to provide consistent guidance in a particular area, plan administration; it was not designed to provide defendants with blanket immunity from liability. Id. at * 5.

Here, the damages suffered by Town Paint and Sandler individually are distinct and separate from those suffered by the Plan and its participants and beneficiaries. Town Paint itself is not claiming that it lost any rights to contributions, earnings or other benefits under the Plan. Instead, it has been injured because if it had been told that the plan was top-heavy and would require additional contributions on an ongoing basis, it would have either discontinued its sponsorship of the Plan, made sure that no further contributions of any nature were made going

forward, or altered the compensation structure of its employees to reflect greater contributions to the Plan when setting salary or other forms of compensation.  With the proper advice, *Town Paint could have avoided paying the contributions completely, not to mention the additional earnings and out-of-pocket expenses to correct the defendants' work.*  (Town Paint incurred significant professional fees and expenses in re-testing the Plan and calculating the lost contributions and earnings.  It incurred these expenses in connection with its application to the IRS to avoid the loss of the Plan's tax-exempt status.)

Similarly, Sandler, as an individual, could have chosen whether to continue with his participation in the Plan or whether to seek alternative retirement investment options, including retirement accounts or plans that were not in jeopardy of loosing their tax-exempt status.  In fact, as a key employee, Sandler doing so could have benefited the Plan generally.  The actions he took with respect to his personal interests in the Plan were in reliance on the advice of the defendants.  Thus, Town Paint's and Sandler's individual damages stem from their continuation and participation in the Plan, not the administration of the Plan.  Further, simply because the Plan might be referenced in some way to calculate Town Paint's and Sandler's damages does not require preemption.  Miara, 2005 WL 1463299 at * 29.

The damages suffered by Town Paint and Sandler individually are independent from those suffered by the participants and beneficiaries of the Plan because the defendants provided advice and services in two different capacities.  The defendants did serve as a fiduciary of the Plan, providing discretionary administrative functions for the Plan, and in turn its participants and beneficiaries, including supposedly ensuring that the Plan was properly funded.  But the defendants also provided advice and services directly to Town Paint and Sandler outside of its role as an ERISA fiduciary.  Those services served a very different purpose, namely to provide

14

the advice upon which Town Paint and Sandler made their decisions concerning their continued sponsorship of and participation in the Plan.

Finally, the preemption of Town Paint's and Sandler's individual common law claims would not further the purpose of ERISA. It would only shield the defendants from liability for their malpractice and misrepresentations. ERISA was not intended to foreclose plaintiffs' traditional common law claims to insulate defendants from liability. To allow preemption here would provide a "shield of immunity which thwarts the legitimate claims of the very people it was designed to protect," a result "conspicuously awry from [ERISA's] original intent." Id. at *5, quoting Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49, 65 (D. Mass. 1997)(Young, C.J.).

The plaintiffs' common law claims are independent causes of action, which are not preempted by ERISA and should not be dismissed.

2. Defendants are Estopped from Arguing that Town Paint's and the Plan's Common Law Claims are Preempted

Not only do the plaintiffs advance common law causes of action that are not preempted by ERISA, the defendants should be estopped from arguing to the contrary. In their motion, the defendants argue that Town Paint and the Plan are excluded from those class of persons permitted to bring fiduciary duty claims under ERISA. At the same time, the defendants also argue that ERISA preempts the plaintiffs' common law claims. Such arguments are fundamentally in conflict; to adopt both would leave Town Paint and the Plan, and all plans and employers as sponsors of plans, with no available cause of action in instances of misrepresentation and professional malpractice. Indeed, the first step in any ERISA preemption analysis is determining whether the plaintiff has standing to sue under ERISA. Miara, supra at *7. If there is no ERISA standing, as the defendants argue, then there can be no preemption. Id.

15

A similar scenario was recently addressed by the Supreme Judicial Court ("SJC") in Ritter v. Massachusetts Casualty Ins. Co., 786 N.E.2d 817, 824 (Mass. 2003). In Ritter, the plaintiff, the president of a company, brought suit in state court against an insurer that provided services for an ERISA plan sponsored by the company. Id. at 819. In the lower court, the insurer obtained summary judgment on the ground that the claims were preempted by ERISA. Id. The SJC, however, relying on federal precedent, found that the plaintiff was in fact an employer without standing to bring ERISA claims,[11] and as matter of law, the state law claims could not be preempted and summary judgment was not appropriate. Id.[12]

The analysis in Ritter is appropriate here. To the extent that ERISA fails to afford them with standing to bring ERISA claims, Town Paint and the Plan have common law claims that cannot be preempted by ERISA. The defendants are estopped from arguing otherwise.

    3.        Plaintiffs' Contribution and Indemnity Claims are Not Preempted

Sandler, as Trustee of the Plan, and Town Paint as Sponsor and potential fiduciary of the Plan, have been exposed to liability due to the errors and omissions of the defendants. With the Plan being under-funded as a result of defendants' malfeasance, the participants and beneficiaries could look to Sandler and Town Paint for the recovery of missing contributions and earnings. Further, if the Plan does indeed lose its tax-exempt status, Sandler and Town Paint could be a focus of any blame. Sandler and Town Paint, however, are not the cause of the under-funding of the Plan; the defendants created this unfortunate situation. Sandler and Town Paint

---

[11] In Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 12-13 (2004), the Supreme Court ruled that a working owner of a company such as Sandler was a "participant" in an ERISA plan sponsored by the company, provided that other, non-family employees were covered by the plan.

[12] Similarly, in several of the cases cited by the defendants for support of their argument that Town Paint and the Plan lack standing to bring ERISA claims, the courts recognized that the lack of standing indicated the existence of federal common law claims similar to state common law claims. See State Street Bank and Trust Co., as Trustee v. Denman Tire Corp., et al., 240 F.3d 83, 89 (1st Cir. 2001); Kwatcher v. Mass. Serv. Employees Pension Fund, 879 F.2d 957, 967 (1st Cir. 1989); Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund, 794 F.2d 221, 236 (6th Cir. 1986).

should have the right to seek contribution and indemnity from the defendants. For the reasons discussed above, the plaintiffs' contribution and indemnification clams are not at all in conflict with the goals of ERISA, and are therefore not preempted.

    4.    <u>Defendants' Arguments Concerning Preemption are Premature</u>

Even if this Court had any doubt that the plaintiffs' common law claims are not preempted by ERISA, dismissal of such claims is premature. As discussed above, the plaintiffs have alleged that the defendants provided services and advice in several capacities and outside of their role as an administrator or fiduciary of the Plan. The defendants claim they were *not* Plan fiduciaries. (<u>See</u> Partial Answer at ¶ 28.) The actual relationship between the parties and the nature of the advice and services must be explored prior to any determination of whether preemption is appropriate. Issues concerning ERISA preemption should be answered in light of all surrounding facts and circumstances, and it is the party claiming ERISA preemption that bears the burden of proving the necessary facts. <u>See</u> <u>Plymouth & Brockton Street Ry. Co. v. Leyland</u>, 664 N.E.2d 17, 20 n.3 (Mass. 1996). A determination of whether a defendant has acted in a capacity that renders it a fiduciary of an ERISA plan is generally an issue of fact that precludes summary judgment, let alone a motion to dismiss. <u>See</u> <u>Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.</u>, 237 F.3d 270, 275 (3rd Cir. 2001); <u>Keach v. U.S. Trust Co., N.A.</u>, 256 F. Supp. 2d 828, 833 (C.D. Ill. 2003); <u>Hawaii Teamsters and Allied Workers, Local 996, IBT v. City Express, Inc.</u>, 751 F. Supp. 1426, 1433-34 (D. Haw. 1990); <u>Stanton v. Shearson Lehman/American Express, Inc.</u>, 631 F. Supp. 100, 103 (N.D. Ga. 1986). <u>See</u> also <u>Framingham Union Hosp.</u>, 721 F. Supp. at 1486 (this Court declined to dismiss employer's ERISA fiduciary duty claims where the record was limited to the pleadings); <u>Patsos v. First Albany Corp.</u>, 741 N.E.2d 841, 849 (Mass.

2001)(generally, a defendant's fiduciary role and duties are a factual issue based on the discretionary nature of its services).

Tellingly, the defendants themselves acknowledge a dispute over the nature of the relationship among the parties. The plaintiffs allege that the defendants are fiduciaries of the Plan and its participants and beneficiaries, yet the defendants *deny* this allegation. (Compare Complaint with Partial Answer at ¶ 28.)[13] The existence of factual disputes requires that the defendants' motion to dismiss be denied.

Whatever the result of this motion, this action will remain before the Court and the same discovery will take place concerning the relationship among the parties, the services and advice provided by the defendants, and the damages suffered by all concerned. At this stage, where the plaintiffs have alleged real damages and liability, the Court should not rush to dismiss claims on the basis that this or that legal theory of recovery may or may not be the one that eventually proves to be the vehicle for recovery. The plaintiffs should be entitled to plead in the alternative and not run the risk of having their claims incorrectly classified and dismissed at this early stage. If there are questions as to which is the most appropriate the theory of recovery, the defendants' motion should be denied so long as the plaintiffs have demonstrated a colorable claim for relief. See Analog Devices, Inc., 1996 WL 208463, at * 2-3 (and cases cited therein).

---

[13] If the plaintiffs' common law claims are preempted and the defendants prevail in denying their role as an ERISA fiduciary of the Plan, then the plaintiffs are either left without any means of recovery or must bring a separate state court action. As discussed, *supra*, this is certainly not an intended result of ERISA.

## Conclusion

For all of the above reasons, the defendants' partial motion to dismiss should be denied.

## Request For Oral Argument

Pursuant to Local Rule 7.1(E), the plaintiffs hereby request oral argument on the defendants' Partial Motion to Dismiss and the plaintiffs' above Opposition thereto.

Respectfully submitted,

JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k)/PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC.,

By their attorneys,

s/Matthew C. Welnicki/

Richard J. Yurko (BBO# 538300)
Matthew C. Welnicki (BBO# 647104)
YURKO & SALVESEN, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Dated: July 22, 2005

**Certificate of Service**

    Undersigned counsel hereby certifies that it caused a copy of the above document to be served on counsel for each other party via the Court's Electronic Filing System and mail this 22nd day of July, 2005.

                                                            s/Matthew C. Welnicki/
                                                             _____