UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES J. SANDLER, individually and as trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k) PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-40073-FDS |
| v. | ) ) | |
| CIPC SYSTEMS, INC. and RICHARD A. PERRY, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is a dispute over the administration of an employee benefit plan. Plaintiffs contend that defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), and, in addition, committed common-law negligence, misrepresentation, and breach of fiduciary duties. Plaintiffs also contend that defendants are liable for indemnification (apparently a common law claim) and contribution (a state law statutory claim).

According to the complaint, Town Paint & Supply Co., Inc., is a small, family-owned business located in Northboro, Massachusetts. At some point, Town Paint decided to create a 401(k) retirement plan for its employees. It hired CIPC Systems to ensure that the plan was, and would at all times remain, tax-qualified under IRS rules. After the passage of about twelve years, the Town Paint discovered that the plan was not tax-qualified because it was a so-called "top

heavy" plan. The resulting disqualification had financially disastrous consequences for the plan participants and the company. Plaintiffs allege that CIPC Systems and one of its principals, Richard Perry, failed to conduct proper testing to ensure that the plan was tax-qualified.

In other contexts, this case would present a relatively straightforward claim of professional malpractice. Because, however, it involves an ERISA-protected plan, it is anything but straightforward.

As noted, plaintiffs have brought both ERISA and common-law claims.[1] Defendants have moved to dismiss this action in part under Fed. R. Civ. P. 12(b)(6), contending that, under ERISA, Town Paint lacks standing to pursue its claims and that all common law claims are preempted. For the reasons that follow, the motion to dismiss will be denied as to the standing issue and otherwise denied without prejudice, and plaintiffs will be given an opportunity to amend their complaint to address certain ambiguities noted below.

## I.   Factual Background

The following are the facts as set forth in plaintiffs' complaint.

Plaintiff Town Paint & Supply Co., Inc., is a Massachusetts corporation with its principal place of business in Northboro, Massachusetts. It is a closely-held, family-run business with approximately 54 employees. Plaintiff James Sandler, a resident of Framingham, Massachusetts, is an apparently an owner or principal of Town Paint. He is also a trustee of the Town Paint benefit plan as well as a plan participant and beneficiary.

Defendant CIPC Systems, Inc., is a Massachusetts corporation with a place of business in

---

[1] For the sake of convenience, the state law statutory claim for contribution will be included as one of the state "common law" claims.

2

Auburn, Massachusetts. CIPC provides consulting and administrative services for employee benefit plans. Richard Perry is an officer and director of CIPC.

In 1992, Town Paint hired CIPC to serve as the plan's third-party administrator. CIPC's duties included testing the plan annually to ensure compliance with Internal Revenue Code requirements for tax-qualified status and advising plaintiffs how to comply with those requirements. In particular, CIPC was responsible for determining whether the plan was "top heavy." In a "top heavy" plan, 60 percent or more of the plan's benefits or account balances accrue to "key employees" of the company. If a plan is "top heavy," its sponsor may be required to make certain minimum contributions in order to maintain the plan's tax-qualified status.

In a letter dated September 3, 1993, defendants informed Town Paint that they had completed testing for 1992 and had concluded that the plan was not "top heavy." The letter also stated that "in order to delay, and hopefully potentially avoid, the plan becoming 'top heavy'" in the future, both James Sandler and another individual should remove from the Plan certain assets that they had rolled over from IRA accounts. Plaintiffs contend that both individuals followed CIPC's advice.

Defendants continued to conduct annual "top heavy" testing. However, in 2004, Town Paint's accountant discovered that CIPC's testing was flawed and concluded that the plan may have been "top heavy" as early as 1992. Town Paint then hired a new third-party administrator to retest the plan and calculate any contributions that Town Paint was required to make in order to preserve the plan's tax-qualified status.

The new third-party administrator concluded that the plan had been "top heavy" as early

3

as 1991. Town Paint informed the IRS of its findings, and requested authorization to make retroactive payments to protect the plan's tax status. Those payments included $251,993.95 in additional minimum contributions and $71,948.92 in earnings on those contributions.

## II.  Analysis

### A.  Standard of Review

The Court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) *aff'd*, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

### B.  Preemption

Defendants have moved to dismiss all common law claims on the grounds that they are preempted by ERISA. The ERISA statute provides that it preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1444(a) (emphasis added). The phrase "relate to" has been interpreted broadly, *see FMC Corp. v. Holliday*, 298 U.S. 52, 58 (1990), but it is not boundless. The Supreme Court has consistently recognized that "[s]ome state actions may affect employee benefit plans in too tenuous, remote,

4

or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983).

Defining the outer limits of ERISA preemption requires looking beyond the statutory language to the statute's objectives. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). Chief among those objectives is "'ensur[ing] that plans and plan sponsors [are] subject to a uniform body of benefits law.'" *Id.* at 656 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

Accordingly, ERISA preempts "(1) state laws that 'mandate[] employee benefit structures or their administration,' (2) state laws that 'bind plan administrators to [a] particular choice,' and (3) state law causes of action that provide 'alternative enforcement mechanisms' to ERISA's enforcement regime." *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 51 (1st Cir. 2000) (quoting *Travelers Insurance Co.*, 514 U.S. at 658-59). The third category is of particular relevance in this dispute.

ERISA preemption remains a thorny area of law—by the Sixth Circuit's count, the Supreme Court has addressed the meaning of "relate to" approximately 23 times in the last 24 years. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 700-02 (6th Cir. 2005). However, several principles relevant to the present case have become well-established.

First, ERISA is the exclusive mechanism to enforce fiduciary duties owed to an ERISA plan, and accordingly the statute preempts state-law claims brought to remedy breaches of those duties. *See, e.g.*, *Eckelkamp v. Beste*, 315 F.3d 863, 869-70 (8th Cir. 2002); *Dudley Supermarket, Inc. v. Transamerica Life Ins. and Annuity Co.*, 302 F.3d 1, 3 (1st Cir. 2002);

5

*Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999); *see generally Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).

Second, it is generally accepted that ERISA does *not* preempt state-law claims against non-fiduciary service providers that render professional services to ERISA plans. *See, e.g.*, *Miami Valley Pension Corp.*, 399 F.3d 700-02; *Gerosa v. Savasta & Co.*, 329 F.3d 317, 323, 329-30 (2d Cir. 2003); *Ariz. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 724 (9th Cir. 1997); *see also Hampers*, 202 F.3d at 53 (collecting cases).

Third, an entity may serve a plan both in a fiduciary and a non-fiduciary capacity, because "fiduciary status under ERISA turns on function rather than form." *Miami Valley Pension Corp.*, 399 F.3d at 699. *See Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Specifically, a "person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added).

Although these principles are well-established, multiple ambiguities in the complaint in this case make their application difficult here. For example, there is substantial dissonance between the allegations made in the complaint itself and those made by plaintiffs in opposing the motion to dismiss. Plaintiffs contend in their opposition filing that defendants played two distinct roles: they performed discretionary administrative functions as plan fiduciaries and provided professional services directly to Town Paint and Sandler. Yet the complaint itself does not allege, or even suggest, that defendants performed two distinct roles. Fairly read, it indicates that the

6

defendants' obligations to perform "top heavy" testing and to advise Town Paint on tax-qualification issues arose solely out of their fiduciary obligations as plan administrators.[2]

In addition, the complaint fails to articulate the specific relationships among the parties—whether, for example, Perry was a third-party administrator to the plan, a professional service provider to Town Paint, or both. The same question arises as to the role of defendant CIPC. Correspondingly, the theories under which plaintiffs are suing each individual defendant are unclear (i.e., whether all claims apply to both defendants or the common-law claims apply to one but not the other).

Finally, plaintiffs' opposition to the motion to dismiss suggests that defendants owed duties to plaintiffs that were independent of their fiduciary obligations to the plan. Such duties might have arisen, for example, under a separate contract. *See, e.g.*, *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1359-60 (9th Cir. 1997) (contract claim against third-party administrator not preempted by ERISA). *Cf. Miami Valley Pension Corp.*, 399 F.3d at 699 ("In the prior cases in which the courts have found that ERISA does not preempt state-law claims against non-fiduciary service providers, a service agreement or contract *separate and distinct* from the ERISA qualified plan served as the basis for the claim.") The complaint, however, is silent as to the existence of any additional independent obligations or their source.

* * *

It seems clear that while plaintiffs have pleaded facts sufficient to state a claim upon which

---

[2] Moreover, the complaint alleges that Town Paint and Sandler themselves are plan fiduciaries. Thus, on its face, the complaint seems to allege a breach of fiduciary duty owed to the plan, brought under ERISA by other plan fiduciaries. Such a claim is enforceable only through ERISA.

7

relief can be granted, it is less clear whether that claim arises under ERISA exclusively or under both ERISA and state law. Regarding the latter possibility, the Court is deeply skeptical of plaintiffs' assertion in their opposition that a single set of actions, *by an ERISA plan fiduciary*, can simultaneously give rise both to ERISA fiduciary liability and to state or common law liability as well. *See Pedre Company, Inc. v. Robins*, 901 F. Supp. 660, 665-66 (S.D.N.Y. 1995) ("[P]laintiffs may not double-plead their injuries, simultaneously seeking recovery for identical conduct under both ERISA and state law."). Nonetheless, the most prudent course, and the one this Court will follow, is to provide plaintiffs an opportunity to amend the complaint to articulate their theories with greater precision. The motion to dismiss on grounds of ERISA preemption therefore will be denied without prejudice.

### C. Standing

Defendants have moved to dismiss the ERISA claim of Town Paint on grounds that the company lacks standing under the statute.[3] ERISA enumerates specific persons who are empowered to bring a civil action under its terms: (1) the Secretary of Labor, (2) a plan participant, (3) a plan beneficiary, or (4) a plan fiduciary. 29 U.S.C. § 1132(a)(2). There is no dispute that Sandler, in his individual capacity as a plan beneficiary and participant, has standing to sue. As a trustee, Sandler is also fiduciary of the plan, and thus has standing to bring a claim in that capacity. *Id.* Defendants argue, however, that Town Paint is not a proper party because it is not among the persons specifically enumerated in 29 U.S.C. § 1132(a)(2).

Generally, an employer is not a proper plaintiff in an ERISA claim under § 409. *See State*

---

[3] Defendants also contend that the plan itself lacks standing to sue for breach of fiduciary duty under ERISA. While apparently true, *see* 29 U.S.C. § 1109, it does not appear that the plan is a named plaintiff here.

*St. Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 88 (1st Cir. 2001). However, an employer may serve as a fiduciary to the plan, and accordingly, may sue under ERISA in that capacity. *See, e.g.*, *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1464-66 (4th Cir. 1996); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 735-36 (8th Cir. 1986); *United States Steel Corp. v. Commonwealth of Pa. Human Relations Comm'n*, 669 F.2d 124, 126-28 (3d Cir. 1982); *see also Norton Co. v. John Hancock Mut. Life Ins. Co.*, Nos. 87-0084, 87-0136, 1992 WL 237410, at *6 (D. Mass. Sept. 14, 1992).

Plaintiffs allege that Town Paint is a fiduciary of the plan, (Compl. ¶ 16), and for the purpose of this motion to dismiss, the Court cannot rule out the possibility that plaintiffs will produce evidence that the company serves in such a capacity. Accordingly, at this stage in the litigation, Town Paint is a proper party.[4] Defendants' motion to dismiss for lack of standing will therefore be denied.

### III. Conclusion

Fore the foregoing reasons:

1. Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is DENIED as to the contention that plaintiff Town Paint & Supply Co., Inc., is without standing; and otherwise is DENIED without prejudice.

2. Plaintiffs shall have until May 16, 2006, to file an amended complaint clarifying the ambiguities noted in this memorandum. Should plaintiffs fail to do so, the Court will deem defendants' motion to dismiss on grounds of preemption to have been

---

[4] Plaintiffs also contend that Town Paint has derivative standing as an assignee of Sander's right to sue. Because independent standing as a fiduciary is possible, the Court will not address this issue.

      renewed on that date.

**So Ordered.**

                                          /s/ F. Dennis Saylor  
                                        F. Dennis Saylor IV  
                                        United States District Judge

Dated: April 14, 2006