UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION

| | |
|---|---|
| JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k)/PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC., <br><br>　　　　　　　Plaintiffs, <br><br>v. <br><br>CIPC SYSTEMS, INC. and RICHARD A. PERRY, <br><br>　　　　　　　Defendants. | Civ. No. 05-40073 |

**REQUEST FOR ENTRY OF DEFAULT**

To the Clerk of the above-named Court:

I, Anthony B. Fioravanti, attorney for the above-named Plaintiffs James J. Sandler, Town Paint & Supply Co., Inc. 401(k)/Profit Sharing Plan and Town Paint & Supply Co., Inc., hereby request that this Court enter a Default as to CIPC Systems, Inc. and Richard A. Perry pursuant to Fed. R. Civ. P. 55(a) due to their failure to plead or to otherwise defend. In support of this request, I hereby state as follows:

　　1.　　The Plaintiffs' Amended Complaint was filed and served on June 6, 2006 via the Electronic Filing ("ECF") system. See Exhibit A.

　　2.　　As the Amended Complaint was filed via the ECF system and counsel for Defendants are registered users of the ECF system, service of the Amended Complaint was effected on Defendants on June 6, 2006. See Exhibit B, Notice of Electronic Filing.

3.	The Defendants have failed to answer or otherwise respond to the Plaintiffs' Amended Complaint within ten days after being served. See Fed. R. Civ. P. 15(a). Therefore, the Plaintiffs are entitled to have this Court enter a Default as to Defendants CIPC Systems, Inc. and Richard A. Perry. See Fed. R. Civ. P. 55(a).

WHEREFORE, the Plaintiffs respectfully request that this Court enter a Default as to CIPC Systems, Inc. and Richard Perry.

Signed under the penalties of perjury,

/s/ Anthony B. Fioravanti
_____
Anthony B. Fioravanti (BBO# 664823)
YURKO, SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

June 26, 2006

## Certificate of Service

      I, Anthony B. Fioravanti, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 26, 2006.

                                              /s/Anthony B. Fioravanti
                                              _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION

No. 05-40073-FDS

|   |   |
|---|---|
| JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k)/PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC., <br><br> Plaintiffs, <br><br> v. <br><br> CIPC SYSTEMS, INC. and RICHARD A. PERRY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## AMENDED COMPLAINT AND JURY DEMAND

### Introduction

1. This Complaint states causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., as well as supplemental causes of action that arise under federal common law and under state law for professional negligence, contribution, and indemnification.

2. James J. Sandler, is a trustee, participant, and beneficiary of the Plaintiff Town Paint & Supply Co., Inc. 401(k)/Profit Sharing Plan (the "Plan"). Town Paint & Supply Co., Inc. ("Town Paint") is the relevant employer and sponsor of the Plan (the "Sponsor"). Together, Sandler, the Plan, and the Sponsor bring this action on behalf of the Plan to recover injuries suffered by the Plan, its participants and beneficiaries, as a result of the Defendants' breach of their duties to the Trustee, the Plan, and the Sponsor. The Defendants, as the Plan's Third Party

Administrator ("TPA"), failed properly to conduct tests and to report properly the results of those tests to determine whether the Plan was in compliance with requirements set forth by the IRS Code and corresponding Regulations, namely requirements concerning "top-heavy" 401(k) Profit Sharing Plans. The defendants also failed to advise what steps the Plan, its Trustees, and its Employer/Sponsor ought to take to address the "top-heavy" nature of the Plan. One of the options to address the "top-heavy" nature of the Plan was for the Employer/Sponsor to make prescribed contributions to the Plan. The Defendants failed properly to advise Town Paint as to the need for any amount of contributions required to be made to the Plan. Indeed, for more than a decade, Defendants failed to conduct the proper tests and failed to report results of proper testing. When Defendants' repeated errors were eventually discovered, the only option to avoid a tax and benefits catastrophe for the Plan and its participants was to make retroactive payments to the Plan by the Employer/Sponsor to avoid the dire consequences of Plan invalidity. The Plan suffered substantial injury in the form of reduced assets and lost earnings together totaling over $320,000. To avoid Plan invalidity and in exchange for an assignment of the Plan's claims against the Defendants, the Plan's Sponsor agreed to make up the contributions and the missing earnings to the Plan.

3. The services that the Defendants provided <u>to</u> <u>the</u> <u>Plan</u> were predominately retrospective and/or contemporaneous. For instance, as TPA, the Defendants prepared the Form 5500 tax return for the Plan, handled employee/participant withdrawals, rollovers, and questions regarding the Plan. In addition to their work for the Plan <u>qua</u> Plan, the Defendants also offered advice and guidance to Town Paint, the employer/sponsor of the Plan, and to the owners of Town Paint, the members of the Sandler family. These services were supposed to be forward-looking. Thus, for instance, if the Defendants saw that the Plan was going to become

"top-heavy" the Defendants had undertaken to advise Town Paint and its owners of the steps that Town Paint could take to avoid this status or how best to address potential "top-heavy" status on a long-term, going-forward basis.  In essence, this service was the benefits equivalent of "tax planning."  Because the Defendants never did the proper testing, they never saw or foresaw that the Plan was or was going to become "top-heavy" and therefore they never advised Town Paint how to avoid such "top-heavy" status or how to accommodate such "top-heavy" status.  This was professional negligence.  Thus, Town Paint suffered substantial injury as a result of the Defendants' professional negligence and incompetence.

**Parties**

4. The Plan is a 401(k)/Profit Sharing Plan that was established by Town Paint as an employer for the benefit of its qualified participating employees.

5. Town Paint is a Massachusetts corporation with its principal place of business at 35 Lyman Street, Northboro.  Town Paint employs several score employees.  Town Paint is the Sponsor of the Plan.

6. James J. Sandler is a citizen of Massachusetts, who resides in Framingham.  James Sandler is a Trustee, participant, and beneficiary of the Plan.  At all relevant times Mr. Sandler has been an owner and principal of Town Paint, along with other members of the Sandler family.

7. Upon information and belief, Defendant CIPC Systems, Inc. ("CIPC") is a Massachusetts corporation with its principal place of business at 250 Hampton Street, Auburn.

8. Upon information and belief, Defendant Richard A. Perry is a Massachusetts resident who lives at 195 Chester Street, Worcester.  Mr. Perry is an officer and director of CIPC, and holds himself out as an employment benefits professional and a Chartered Financial

Consultant ("ChFC"), Chartered Life Underwriter ("CLU"), and a Qualified Pension Accountant ("QPA").

**Jurisdiction**

9. The Plaintiffs have jurisdiction to bring this action against the Defendants pursuant to 29 U.S.C. § 1132, including but not limited to subsection (a)(2).

10. Pursuant to 29 U.S.C. § 1132(e), this Court has the subject matter jurisdiction to resolve the Plaintiffs' claims brought under ERISA.

11. Pursuant to 28 U.S.C. § 1132(g), in addition to entering a judgment awarding the Plaintiffs their monetary damages in the form of the missed contributions, earnings, and costs incurred in recalculating the contributions and earnings, this Court has the authority to award the Plaintiffs their costs and attorney's fees incurred in prosecuting this action along with any other such equitable relief.

12. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to resolve the Plaintiffs' other related claims under federal common law and state law as all such claims involve the same parties and arise out the same transactions, controversy, and common facts.

**Facts**

13. Well before 1992, Town Paint established the Plan for the benefit of its employees and for the benefit and good will it engendered among its long-time employees. Since Town Paint is a relatively small, privately-held company, it did not have an extensive Human Resource department but rather, it relied on outside professionals to advise it regarding employee matters, including employee benefit plans. Starting in or about 1992, Town Paint engaged the Defendants to serve in two capacities: (i) as the TPA for the Plan and (ii) to give Town Paint advice on how it could address the Plan and its costs long-term.

14. An integral part of serving both as the Plan's TPA and to advise Town Paint on how to plan for the Plan long-term, was (i) doing annual testing to determine whether the Plan was top-heavy, and (ii) if the Plan was top-heavy, or was going to become so, as many plans are, to advise Town Paint with respect to the impact of such top-heavy status and the several potential options open to Town Paint. The Defendants undertook to perform such testing and to provide such advice to Town Paint.

15. A defined contribution profit-sharing plan subject to the requirements of IRS Code 401(k) is deemed to be "top-heavy" if 60% or more of the benefits or account balances accrue to "key employees." Key employees include all employees who own at least 5% of the business or earn in excess of set amounts. Key employees also include all of the spouses, children, grandchildren, and parents of employees owning at least 5% of the business as described above. In general, <u>if</u> a plan is top-heavy in any particular year <u>and</u> the sponsor is making <u>any</u> form of contribution to the plan, a "minimum contribution" for the benefit of each participating employee must be calculated and contributed to the plan under the applicable rules and regulations. If a sponsor fails to comply with these top-heavy rules and regulations, the plan may lose its tax-exempt status. The loss of tax-exempt status for a plan would have disastrous consequences for a plan. For instance, it would mean that monies received by the participants in the plan would be taxed immediately rather than being tax-deferred or tax-exempt. If loss of tax-exempt status is retroactive, it would entail many years in taxes, penalties, and interest for each participant and the Plan itself.

16. Pursuant to 29 U.S.C. § 1002(21)(A), by acting as the Plan's TPA, and in performing the noted services as TPA, the Defendants were fiduciaries (or sub-fiduciaries) of the Plan as defined by ERISA and they owed the Plan the fiduciary duty to perform the above

5

services and provide the above advice in a competent, professional manner.  Similarly, the Defendants owed similar professional, non-ERISA – based duties to Town Paint regarding the benefits planning advice that was also to be based on such testing.

17. In connection with the benefit planning nature of their work, the Defendants understood they were to, and did, communicate with Town Paint with an eye on the future consequences of contemporaneous actions.  For instance, in a letter dated September 3, 1993, the Defendants informed Town Paint that they had completed the top-heavy testing for the Plan's Fiscal Year 1992.  (A true and accurate copy of this letter is attached hereto as Exhibit A.)  In this letter, the Defendants addressed "potential top-heavy issues," but assured Town Paint that the Plan was not top-heavy for that year.  Indeed, the September 3, 1993 letter also stated that future top-heavy status for the Plan may be delayed or avoided by having two key employees, Messrs. David Sandler and James Sandler, withdraw amounts "rolled over" into the Plan from a different plan, the Sandler Realty plan.  The letter did not note that any other actions, such as the withdrawal of benefits to key employees, were needed to avoid top-heavy status.  In response to the September 3, 1993 letter, and based on the Defendants' advice, Messrs. David Sandler and James Sandler withdrew from the Plan the amounts rolled over from the Sandler Realty plan.  Because they were not advised that anything else needed to be done, they took no other action to avoid or delay top-heavy status for the Plan.

18. The September 3, 1993 letter was fatally erroneous.  In 1992, the Plan was already top-heavy.  Because the Plan was already top-heavy, Town Paint was required to make minimum "top-heavy" contributions to the Plan and the failure to do so in 1993 jeopardized the Plan's on-going tax-exempt status.  The removal of the "rolled-over" Sandler Realty amounts <u>did</u> <u>not</u> cure the Plan's top-heavy status.  Indeed, any proper testing of the Plan would have disclosed that the

Plan was both "top-heavy" and likely to remain so for the foreseeable future. More importantly, however there were several actions that Town Paint could have taken in 1993 to avoid any future liability for top-heavy contributions for the Plan. But, because the Defendants did not test the Plan properly, the Defendants never recognized this and never advised Town Paint of the various steps it could take to eliminate its future liability for minimum contributions.

19. In each year subsequent to 1993, the Defendants, both as part of their engagement as the Plan's TPA and also to advise Town Paint, performed top-heavy testing for the Plan for the prior fiscal year. At no time did the Defendants recognize that the Plan was "top-heavy" and at no time did the Defendants advise Town Paint of the steps it could take to prevent any liability for top-heavy minimum contributions.

20. In 2004, Town Paint engaged its accountant and an outside record-keeper to review the Plan's records. Based on this review, Town Paint's accountant determined that the Defendants had not properly tested the top-heavy status of the Plan, and that the Plan had likely been top-heavy as early as 1992.

21. Subsequently, the Plaintiffs hired a new TPA, among other things, (i) to retest the top-heavy status of the Plan and (ii) to calculate the amounts of contributions and earnings Town Paint was required to contribute retroactively to the Plan to protect the Plan's tax exempt status.

22. The new TPA determined that the Plan was indeed top-heavy as early as 1991.

23. If Town Paint had known in advance that the Plan was top heavy and was likely to remain so for the foreseeable future, there are numerous steps it could have taken to address this situation, including, without implied limitation, (a) encouraging and incentivizing non-owners to participate more fully in the Plan, (b) encouraging and incentivizing owners not to participate as fully in the Plan, (c) slowing the increase in compensation for employees over the

7

years and devoting such funds to minimum contributions, (d) halting all Sponsor contributions to the Plan, or (e) terminating the Plan.  Addressed on a forward-looking basis, Town Paint could have avoided top-heavy status for the Plan altogether, it could have made provisions to make the minimum contribution out of its total employee compensation pie, or it could have taken another step that would have avoided liability for minimum contributions.

24. However, because the Defendants never did the proper testing and never advised Town Paint or the Plan that the Plan was "top-heavy" over the course of more than a decade of services to Town Paint and the Plan, Town Paint and the Plan's options for how to address the Plan's "top-heavy" status, when it was discovered, were extremely limited.  Basically, the Plan was faced with the prospect of either (a) losing its tax exempt status for the last dozen years, which would have had disastrous consequences for all participants, the Plan, and Town Paint, or (b) employing various professionals and making retroactive payments of a dozen years of minimum contributions, foregone earnings, and various other interest and other costs.

25. As a result, Town Paint, to protect the Plan's tax-exempt status, voluntarily informed the IRS of the recalculations and requested authorization from the IRS to make retroactive payments to the Plan to protect the Plan's tax-exempt status.  These retroactive payments include $251,993.95 in additional minimum top-heavy contributions and $71,948.92 in earnings on the contributions.  These amounts are calculated as set forth in Exhibit B.

26. To date, the Plaintiffs have incurred a significant amount of professional fees and costs to retest the top-heavy status of the Plan and to prepare and submit an application to the IRS for authorization to make retroactive payments.  These fees and costs include over $15,000 in legal fees, $20,000 in new professional and TPA fees, thousands of dollars in accountants'

fees, and a $5,000 IRS application fee.  These amounts do not include the substantial legal fees that Plaintiffs will incur as a result of their efforts to recover against the Defendants.

COUNT I
(Breach of Fiduciary Duty to the Plan, Its Participants,
Beneficiaries and Trustee under ERISA)

27.     The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 26, above.

28.     As described above, each of the Defendants was a fiduciary or sub-fiduciary of the Plan.

29.     Among other things, Section 404(1) (emphasis added) of ERISA requires a Fiduciary to:

"discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and --

   (A) for the exclusive purpose of:

      (i) providing benefits to participants and their beneficiaries; and

      (ii) defraying reasonable expenses of administering the plan;

   (B)   with *the care, skill, prudence, and diligence* under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

30.     Pursuant to 29 U.S.C. § 1109: (emphasis added)

"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be *personally liable* to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

9

31. Specifically, the Defendants had a duty properly to conduct top-heavy testing and to advise the Plan, its Sponsor, and Trustees, as to the results of such testing and, where necessary, the appropriate amount of minimum contributions to be made to the Plan.

32. The Defendants breached their fiduciary duties by failing properly to conduct top-heavy testing and by failing to provide adequate advice to the Plan, its Sponsor, and its Trustees regarding the minimum contributions to the Plan.

33. As a result of the Defendants' breach of their duties, the Plan, its participants and beneficiaries, have suffered significant damages and would have suffered still more damages. Specifically, the Plan has been under-funded. To mitigate the damages suffered by the Plan, its participants and beneficiaries, Town Paint agreed to advance for the Plan twelve years of missing minimum contributions and earning hereon, plus various other costs and fees, in exchange for the assignment of the Plan's rights to pursue the Defendants.

## COUNT II
(Professional Negligence to Town Paint)

34. The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 33, above.

35. The Defendants were engaged by Town Paint to provide benefits advice and services in the design and operation of the Plan.  Under the terms of this engagement, the Defendants were hired to test the top-heavy status of the Plan and to provide forward-looking advice to Town Paint should it be determined that the Plan was top-heavy or likely to become so.

36. As such, the Defendants owed Town Paint a duty of care to advise it and to perform professional services in a reasonable and diligent manner in accordance with the reasonable practice of similar professionals in a comparable situation.

37.     As described herein, under federal common law and state common law, the Defendants breached their duty of care to Town Paint and failed to provide professional services in a reasonable and diligent manner in accordance with the reasonable practice of similar professionals in a comparable situation. The Defendants' breach of their duties of care constitute professional negligence.

38.     As a result of the Defendants' breach of their duty and as a result of their professional negligence, Town Paint suffered significant damages as described herein.

COUNT III
(Negligent Misrepresentation to Town Paint)

39.     The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 38, above.

40.     In providing professional services for Town Paint, the Defendants made material representations, including those concerning the top-heavy status of the Plan. The Defendants, however, knew or should have known that their representations to Town Paint were incorrect. The Defendants also failed to advise of various matters on which they had an obligation to advise Town Paint.

41.     At all relevant times, Town Paint reasonably relied upon the Defendants' representations in the operation of the Plan and in not planning for the Plan as top-heavy.

42.     As a direct result of the Defendants' misrepresentations, under federal common law and state common law, Town Paint has suffered significant damages as described herein.

## COUNT IV
### (Indemnification)

43.     The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 42, above.

44.     Due to the actions of the Defendants, Town Paint was required, as described above, to make additional, retroactive contributions and payments to the Plan.

45.     Because the contributions and payments required to be made by Town Paint are the direct result of the actions of the Defendants, the Defendants are obligated to indemnify Town Paint respect to such contributions, payments, and claims.

## COUNT V
### (Contribution)

46.     The Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1 through 45, above.

47.     Due to the actions of the Defendants, Town Paint was required, as described above, to make additional, retroactive contributions and payments to the Plan.

48.     To the extent that Town Paint is responsible to make such contributions or payments, the Defendants are jointly responsible for such contributions, payments or damages.

49.     Therefore, the Defendants are obligated to Town Paint for their pro-rata share of the contributions, payments or damages pursuant to G.L. c. 231B and under federal common law.

WHEREFORE, the Plaintiffs demand judgment as follows:

A. Judgment against the Defendants in favor of the Plan, and its assigns, on Count I for the full amount of the damages suffered by the Plan and the other plaintiffs plus interest;

B.  Judgment against the Defendants in favor of Town Paint on Counts II - V for the full amount of damages suffered, plus interest;

C.  An award to the Plaintiffs of their attorney's fees and costs under applicable law; and

D.  Any other relief that this Court deems just and appropriate.

## JURY DEMAND

The Plan demands a trial by jury on all claims so triable.

> JAMES J. SANDLER, Individually and as Trustee of the TOWN PAINT & SUPPLY CO., INC. 401(k)/PROFIT SHARING PLAN, and TOWN PAINT & SUPPLY CO., INC.,
>
> By their attorneys,
>
> /s/ Anthony B. Fioravanti
> _____
> Richard J. Yurko (BBO# 538300)
> Anthony B. Fioravanti (BBO# 664823)
> YURKO, SALVESEN & REMZ P.C.
> One Washington Mall, 11th Floor
> Boston, MA 02108-2603
> (617) 723-6900

Dated:  June 6, 2006

# Complaints and Other Initiating Documents
4:05-cv-40073-FDS Sandler et al v. CIPC Systems, Inc. et al

**United States District Court**

**District of Massachusetts**

Notice of Electronic Filing

The following transaction was received from Fioravanti, Anthony entered on 6/6/2006 at 3:38 PM EDT and filed on 6/6/2006
**Case Name:**     Sandler et al v. CIPC Systems, Inc. et al
**Case Number:**   4:05-cv-40073
**Filer:**         James J. Sandler
                   Town Paint &Supply Co., Inc.
**Document Number:** 18

**Docket Text:**
AMENDED COMPLAINT against CIPC Systems, Inc., Richard A. Perry, filed by James J. Sandler, Town Paint &Supply Co., Inc.. (Attachments: # (1) Exhibit A# (2) Exhibit B)(Fioravanti, Anthony)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/6/2006] [FileNumber=1453431-0]
[3ae0e55cb154f19894835a304200443f7b9878e053077ec8b4c6836a964c1a1e39ab
9370cac0e911576793f8f22ca7c267ccf103794950444466e521766dd93a]]
**Document description:** Exhibit A
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/6/2006] [FileNumber=1453431-1]
[1af007cb2dfcb6d848db54f2c4a1725fe8f5a964c255332940e16c3a1ec859134aab
f915dde34e40183abaf8d55832dd3582526c1e497aaf2fe0c1f589c201dc]]
**Document description:** Exhibit B
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/6/2006] [FileNumber=1453431-2]
[bb551979139c1f75e95a96b12993e93dc72fade84c6a9b94672ef982055649b5303b
0d0ff17082b31598455bc51f8d1f2cd5a40c1cfb385716f891b2f72822b3]]

**4:05-cv-40073 Notice will be electronically mailed to:**

Michele Carlucci    michele.carlucci@wilsonelser.com, sara.palencia@wilsonelser.com

Anthony B. Fioravanti    abf@bizlit.com

George C. Rockas    george.rockas@wilsonelser.com, sara.palencia@wilsonelser.com

Richard J. Yurko    RJY@bizlit.com

**4:05-cv-40073 Notice will not be electronically mailed to:**